**Slip Op. 23-95**

### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PROSPERITY TIEH ENTERPRISE CO., LTD. AND YIEH PHUI ENTERPRISE CO., LTD.,** | |
| Plaintiffs, | |
| v. | |
| **UNITED STATES,** | **Before:  Timothy C. Stanceu, Judge** |
| Defendant, | **Consolidated Court No. 16-00138** |
| and | |
| **CALIFORNIA STEEL INDUSTRIES, INC., CLEVELAND-CLIFFS STEEL CORP., CLEVELAND-CLIFFS STEEL LLC, NUCOR CORP., STEEL DYNAMICS, INC., AND UNITED STATES STEEL CORP.,** | |
| Defendant-Intervenors. | |

### OPINION

[Sustaining certain decisions reached in a second remand redetermination submitted in response to court order]

Dated: June 23, 2023

*Donald B. Cameron*, Morris, Manning & Martin LLP, of Washington, D.C., for plaintiff Prosperity Tieh Enterprise Co., Ltd.  With him on the briefs were *Julie C. Mendoza*, *R. Will Planert*, *Brady W. Mills*, *Eugene Degnan*, *Mary S. Hodgins*, and *Nicholas C. Duffey*.

*Kelly A. Slater*, Appleton Luff Pte Ltd, of Washington D.C., for plaintiff Yieh Phui Enterprise Co., Ltd.  With her on the brief were *Jay Y. Nee* and *Edmund W. Sim*.

*Elizabeth A. Speck*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Claudia Burke*, Assistant Director.  Of counsel on the briefs was *Leslie M. Lewis*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Daniel L. Schneiderman* and *Stephen P. Vaughn*, King & Spalding LLP, of Washington D.C., for defendant-intervenors Cleveland-Cliffs Steel Corp. and Cleveland-Cliffs Steel LLC.

*Alan H. Price*, *Christopher B. Weld*, and *Timothy C. Brightbill*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Corp.

*Roger B. Schagrin* and *Jeffrey D. Gerrish*, Schagrin Associates, of Washington, D.C., for defendant-intervenors Steel Dynamics, Inc. and California Steel Industries, Inc.

*Thomas M. Beline* and *Sarah E. Shulman*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for defendant-intervenor United States Steel Corp.

Stanceu, Judge: Plaintiffs Prosperity Tieh Enterprise Co., Ltd. ("Prosperity" or "PT") and Yieh Phui Enterprise Co., Ltd. ("Yieh Phui" or "YP") brought actions, now consolidated, to contest an affirmative "less-than-fair-value" determination issued by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in an antidumping duty investigation of certain corrosion resistant steel products ("CORE") from Taiwan.

Before the court is the decision (the "Second Remand Redetermination"), Commerce submitted in response to this Court's opinion and order in *Prosperity Tieh*

*Enterprise Co., Ltd. v. United States*, 45 CIT __, 532 F. Supp. 3d 1401 (2021)

("*Prosperity IV*").  Final Results of Redetermination Pursuant to Ct. Remand (Int'l Trade

Admin. Feb. 14, 2022), ECF Nos. 155-1 (conf.), 156-1 (public) ("*Second Remand*

*Redetermination*").

 In *Prosperity IV*, this Court, responding to the mandate of the U.S. Court of

Appeals for the Federal Circuit ("Court of Appeals") in *Prosperity Tieh Enterprise Co.,*

*Ltd. v. United States*, 965 F.3d 1320 (Fed. Cir. 2020) ("*Prosperity III*"), ordered Commerce

to "submit, in accordance with the instructions herein, a second determination upon

remand" that is "consistent with the opinion of the Court of Appeals."  *Prosperity IV*,

45 CIT at __, 532 F. Supp. 3d at 1409.

 Plaintiffs and defendant support the Second Remand Redetermination;

defendant-intervenors are opposed.  The court sustains decisions Commerce reached in

the Second Remand Redetermination but, as discussed later in this Opinion, does not

sustain a speculative statement Commerce improperly included in that document.

## I. BACKGROUND

 Background on this case is presented in prior opinions and is briefly summarized

and supplemented herein.  *Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1402–05;

*Prosperity III*, 965 F.3d at 1322–26; *Prosperity Tieh Enterprise Co., Ltd. v. United States*,

42 CIT __, __, 358 F. Supp. 3d 1363, 1365–66 (2018) ("*Prosperity II*"); *Prosperity Tieh*

*Enterprise Co., Ltd. v. United States*, 42 CIT __, __, 284 F. Supp. 3d 1364, 1366–68 (2018)

("*Prosperity I*").

### A.  The Parties

Plaintiffs Prosperity and Yieh Phui are Taiwanese producers and exporters of

CORE.  Defendant is the United States.  The defendant-intervenors, domestic producers

of steel products, are California Steel Industries, Inc., Cleveland-Cliffs Steel Corp.,

Cleveland-Cliffs Steel LLC, Nucor Corp., Steel Dynamics, Inc., and United States Steel

Corp.

### B.  The Department's Final and Amended Final Less-than-Fair-Value Determinations

The agency decision contested in this litigation (the "Amended Final

Determination") was published as *Certain Corrosion-Resistant Steel Products From India,*

*Italy, the People's Republic of China, the Republic of Korea and Taiwan: Amended Final*

*Affirmative Antidumping Determination for India and Taiwan, and Antidumping Duty*

*Orders*, 81 Fed. Reg. 48,390 (Int'l Trade Admin. July 25, 2016) ("*Amended Final*

*Determination and Order*"), which modified the Department's earlier decision (the "Final

Determination") in *Certain Corrosion-Resistant Steel Products From Taiwan: Final*

*Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical*

*Circumstances, in Part*, 81 Fed. Reg. 35,313 (Int'l Trade Admin. June 2, 2016) ("*Final*

*Determination*").  The period of investigation ("POI") was April 1, 2014 through

March 31, 2015.  *Final Determination*, 81 Fed. Reg. at 35,313.

In the Final Determination, Commerce determined an estimated weighted

average dumping margin of 3.77% *ad valorem* for what it treated as a single entity

consisting of Prosperity, Yieh Phui, and a third Taiwanese producer of CORE, Synn

Industrial Co., Ltd. ("Synn").  *Final Determination*, 81 Fed. Reg. at 35,314.  Commerce

incorporated by reference an explanatory memorandum to support its conclusions in

the Final Determination.  *Issues and Decision Memorandum for the Final Determination in*

*the Antidumping Duty Investigation of Certain Corrosion-Resistant Steel Products from*

*Taiwan* (May 24, 2016), ECF No. 42-6, PR Doc. 372 ("*Final I&D Mem.*").[1]  In the Amended

Final Determination, Commerce modified its calculation in response to an allegation of

a ministerial error and assigned the Prosperity/Yieh Phui/Synn entity a revised

estimated weighted-average dumping margin of 10.34%.  *Amended Final Determination*

*and Order*, 81 Fed. Reg. at 48,391.

---

[1] References cited as "PR Doc. __" are to documents that were on the record as of
the proceedings in *Prosperity Tieh Enterprise Co., Ltd. v. United States*, 42 CIT __, 284
F. Supp. 3d 1364 (2018), Joint Appendix (June 7, 2017), ECF Nos. 73 (conf.), 74 (public).
References cited as "Remand PR Doc. __" are to documents placed on the agency record
during Commerce's redetermination proceedings, Joint Appendix (May 20, 2022), ECF
Nos. 171 (conf.), 172 (public).  All citations are to public versions.

In the preliminary phase of its investigation, Commerce identified Yieh Phui and Prosperity as "mandatory" respondents, i.e., respondents it would investigate individually. *Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1403 (citing *Selection of Respondents for the Antidumping Duty Investigation on Certain Corrosion-Resistant Steel Products from Taiwan* at 4 (Int'l Trade Admin. July 20, 2015), PR Doc. 62). Commerce identified Synn as another Taiwanese producer of CORE that had manufactured but had not exported the subject merchandise to the United States during the POI. *Prosperity I*, 42 CIT at __, 284 F. Supp. 3d at 1367 n.4 (citation omitted). Commerce preliminarily determined that Synn was an affiliate of Yieh Phui "pursuant to section 771(33)(E) of the [Tariff] Act," 19 U.S.C. § 1677(33)(E), and preliminarily determined that Yieh Phui and Synn "should be collapsed together and treated as a single company, pursuant to the criteria laid out in 19 C.F.R. § 351.401(f)." *Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1403 (citing *Final Determination*, 81 Fed. Reg. at 35,314). For both Prosperity and the combined Yieh Phui/Synn entity, Commerce "preliminarily determined zero margins" and therefore "reached a negative less-than-fair-value determination." *Id.* (citing *Certain Corrosion-Resistant Steel Products from Taiwan: Negative Preliminary Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 72, 73 n.8 (Int'l Trade Admin. Jan. 4, 2016)).

Commerce reached an affirmative final less-than-fair-value determination.  *Id*.

(citing *Final I&D Mem.* at 11–19 and *Final Determination*, 81 Fed. Reg. at 35,313).

Commerce continued to "collapse" Yieh Phui and Synn, i.e., treat them as a single

entity, and "determined that PT is also affiliated with Synn" such that "the three

companies should be collapsed together and treated as a single company."  *Id*., 45 CIT at

__, 532 F. Supp. 3d at 1404 (quoting *Final Determination*, 81 Fed. Reg. at 35,314).

Concluding that Prosperity had "misreported the yield strength of certain of its sales of

CORE," Commerce, "invoking its authority under 19 U.S.C. § 1677e, applied 'facts

otherwise available' and an 'adverse inference' [described by Commerce as 'adverse

facts available'] to the costs of the sales it found to be misreported."  *Id*.  Commerce

assigned the combined Prosperity/Yieh Phui/Synn entity an estimated weighted-

average dumping margin of 3.77%.  *Id*.  While recalculating this margin to 10.34% in the

Amended Final Determination to adjust for the ministerial error, Commerce did not

alter its decisions to collapse the three companies and to draw an adverse inference for

the reporting by Prosperity.  *Id*. (citing *Amended Final Determination and Order*, 81 Fed.

Reg. at 48,393).

## C.  Prior Proceedings

In contesting the Amended Final Determination, plaintiffs sought judgment on

the agency record.  Rule 56.2 Mot. For J. Upon the Agency R. on Behalf of Pl. Yieh Phui

Enterprise Co., Ltd. (Dec. 15, 2016), ECF No. 51; Mem. of Points and Authorities in

Supp. of Pl. Yieh Phui Enterprise Co., Ltd.'s Rule 56.2 Mot. for J. on the Agency R.

(Dec. 15, 2016), ECF Nos. 52 (conf.), 53 (public); Mot. of Pl. Prosperity Tieh Enterprise

Co., Ltd. for J. Upon the Agency R. & Pl. Prosperity Tieh Enterprise Co., Ltd.'s Br. in

Supp. of its Mot. for J. on the Agency R. (Dec. 15, 2016), ECF Nos. 54 (conf.), 55 (public).

Plaintiffs contested the Department's decision to collapse Prosperity with Yieh

Phui/Synn and the Department's invoking facts otherwise available with an adverse

inference in response to Prosperity's reported yield strengths.  *Prosperity IV*, 45 CIT at

__, 532 F. Supp. 3d at 1404.

In *Prosperity I*, this Court ruled that Commerce reached certain findings

unsupported by the record in making its collapsing decision.  *Prosperity I*, 42 CIT at __,

284 F. Supp. 3d at 1375.  This Court also ruled that Commerce had erred in using an

adverse inference on a finding that Prosperity had misreported yield strength

information, Commerce having failed to specify that yield strength was to be reported

according to an external industry standard as opposed to manufacturer's specifications.

*Id.*, 42 CIT at __, 284 F. Supp. 3d at 1376–82.  Reasoning that Commerce had an

obligation to issue adequate reporting instructions for its questionnaire, this Court

noted a "lack of specificity arising from the breadth of the terms Commerce used" and

the "absence of definitions for those terms."  *Id.*, 42 CIT at __, 284 F. Supp. 3d at 1380.

Commerce issued its "First Remand Redetermination" in response to the order in

*Prosperity I*.  Final Results of Redetermination Pursuant to Ct. Remand (May 23, 2018),

ECF Nos. 86 (conf.), 87 (public) ("*First Remand Redetermination*").  Commerce "again

determined that it should collapse Prosperity with the Yieh Phui/Synn entity" and,

under protest, "used Prosperity's reported yield strength data for its CORE production

rather than facts otherwise available and an adverse inference." *Prosperity IV*, 45 CIT at

__, 532 F. Supp. 3d at 1405 (citing *First Remand Redetermination* at 2).  Commerce

determined an estimated weighted-average dumping margin of 3.66% for the combined

entity.  *Id*. (citation omitted).  In *Prosperity II*, the court sustained the First Remand

Redetermination.

The plaintiffs and one of the defendant-intervenors (AK Steel Corp.) appealed

the judgment accompanying *Prosperity II*, and in *Prosperity III* the Court of Appeals

vacated this Court's judgment in *Prosperity II* and remanded the decision "for further

proceedings consistent with this opinion." *Prosperity III*, 965 F.3d at 1328.  Specifically,

the Court of Appeals held that "Commerce did not engage in a permissible analysis in

reaching its decision on collapsing of producers" and "further, that Commerce did not

err in invoking its authority to use facts otherwise available with an adverse inference

in response to Prosperity's reporting of yield strength." *Prosperity IV*, 45 CIT at __, 532

F. Supp. 3d at 1405 (citing *Prosperity III*, 965 F.3d at 1326–28).  Pursuant to the mandate

issued by the Court of Appeals in *Prosperity III*, CAFC Mandate in Appeal # 19-1400

(Sept. 8, 2020), ECF No. 132, this Court remanded the First Remand Redetermination to

Commerce in *Prosperity IV*.

 Commerce issued a draft version of the Second Remand Redetermination to the

parties and invited comments, which it received from defendant-intervenors and Yieh

Phui.  *Draft Results of Redetermination Pursuant to Ct. Remand* (Int'l Trade Admin.

Nov. 24, 2021), Remand PR Doc. 2; *Corrosion-Resistant Steel Products From Taiwan:*

*Comments on Draft Results of Second Redetermination* (Dec. 10, 2021), Remand PR Doc. 11;

*Corrosion-Resistant Steel Products from Taiwan: Rebuttal Comments on the Second Draft*

*Results of Redetermination* (Jan. 26, 2022), Remand PR Doc. 15.  Commerce submitted the

Second Remand Redetermination to the court on February 14, 2022.

 Plaintiffs submitted comments in support of the Second Remand

Redetermination on March 30, 2022.  Pl. Prosperity Tieh's Comments on the U.S.

Department of Commerce's [February 14], 2022 Final Redetermination Pursuant to Ct.

Remand, ECF No. 163; Comments of Pl. Yieh Phui Enterprise Co., Ltd. on the Final

Results of Redetermination Pursuant to Ct. Remand, ECF No. 162.  Defendant-

intervenors submitted their comments in opposition on the same day.  Def.-Intervenors'

Comments on Final Results of Redetermination Pursuant to Ct. Remand, ECF Nos. 164

(conf.), 165 (public) ("Def.-Ints.' Comments").  Defendant responded to defendant-

intervenors' comments on May 6, 2022, Def.'s Resp. to Def.-Intervenors' Comments on

Remand Results, ECF Nos. 168 (conf.), 169 (public), and updated their response on

June 2, 2022, Def.'s Corrected Resp. to Def.-Intervenors' Comments on Remand Results,

ECF Nos. 177 (conf.), 178 (public).

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), *as amended* 19 U.S.C.

§ 1516a.[2]  Among the decisions that may be contested according to Section 516A are

"[f]inal affirmative determinations" that Commerce issues concerning the sale of goods

at less than fair value.  *Id*. §§ 1516a(a)(2)(B)(i), 1673d.  In reviewing an agency

determination, including one issued in response to court remand, the court must set

aside any determination, finding, or conclusion found "to be unsupported by

substantial evidence on the record, or otherwise not in accordance with law."  *Id*.

§ 1516a(b)(1)(B)(i).  Substantial evidence refers to "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *SKF USA, Inc. v.*

---

[2] All citations herein to the United States Code are to the 2012 edition except where otherwise noted.  All citations to the Code of Federal Regulations are to the 2021 edition.

*United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)).

### B.  The Second Remand Redetermination

In the Second Remand Redetermination, Commerce "reconsidered the

determination to collapse Prosperity with YP/Synn upon further consideration of the

record" and "determined that the record does not provide sufficient information to

support collapsing Prosperity with the YP/Synn entity."  *Second Remand Redetermination*

at 2.  Effectuating this determination, Commerce "recalculated separate margins for

Prosperity and YP/Synn."  *Id*. at 2–3.

Commerce determined an estimated weighted-average dumping margin for

Prosperity of 11.04%, *id*. at 4, which, in response to this Court's order effectuating the

decision of the Court of Appeals, reflected the reinstatement of findings for the use of

facts otherwise available and an adverse inference in response to Prosperity's reporting

of yield strength, *id*. at 7.  Commerce determined a *de minimis* estimated weighted-

average dumping margin of 1.20% for what it now determined to be the separate Yieh

Phui/Synn entity, "which, if sustained by the Court, will result in the exclusion of

entries of subject merchandise produced and exported by the YP/Synn entity from the

antidumping duty order."  *Id*. at 4; *see Amended Final Determination and Order*, 81 Fed.

Reg. at 48,391–93.

### C.  Commerce's Decision in the Second Remand Redetermination Not to Collapse Prosperity with the Yieh Phui/Synn Entity

In *Prosperity III*, the Court of Appeals held that:

> Commerce, in applying its collapsing regulation [19 C.F.R. § 351.401(f)] to a situation involving three or more affiliated producers, must apply the criteria in its regulation to the evidence of relationships between all three or more of those producers, even when a previous decision to collapse two of those producers was not contested by any party to the litigation that gave rise to the remand proceeding.

*Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1406 (citing *Prosperity III*, 965 F.3d at 1326).

Commerce, in this proceeding, must determine "either: (i) the relationship between each individual entity being considered for collapse (here, Prosperity to Synn, Prosperity to Yieh, and Yieh to Synn) or (ii) the relationship between an individual entity and an already collapsed entity with which it is being considered for further collapsing (here, Prosperity to Yieh/Synn)."  *Id*., 45 CIT at __, 532 F. Supp. 3d at 1406–07 (quoting *Prosperity III*, 965 F.3d at 1328).  "The Court of Appeals viewed as impermissible the Department's deeming an analysis of the relationship between Prosperity and Synn to *be* an analysis of the relationship between Prosperity and the Yieh Phui/Synn entity, regardless of the earlier, uncontested collapsing [of Yieh Phui and Synn]."  *Id*., 45 CIT at __, 532 F. Supp. 3d at 1407.

In its earlier determinations (the Final and Amended Final Determinations, as well as the First Remand Redetermination), Commerce analyzed *only* the relationships

between Prosperity and Synn and between Yieh Phui and Synn and, upon determining

that Prosperity and Synn could be collapsed, assumed that Prosperity also could be

collapsed with the Yieh Phui/Synn single entity.  Commerce did not assess separately

whether Prosperity and Yieh Phui could be collapsed, independently of their respective

relationships with Synn.  In the Second Remand Redetermination, Commerce chose to

evaluate "the relationship between Prosperity and the Yieh Phui component of the

YP/Synn single entity."  *Second Remand Redetermination* at 2.

Under its regulations, Commerce may "treat two or more . . . producers as a

single entity" in antidumping proceedings when three requirements are satisfied.

19 C.F.R. § 351.401(f); *see also Prosperity III*, 965 F.3d at 1323.  First, the entities must be

affiliated.  19 C.F.R. § 351.401(f)(1).  Second, affiliated producers must "have production

facilities for similar or identical products that would not require substantial retooling of

either facility in order to restructure manufacturing priorities."  *Id.*  Third, "there is a

significant potential for the manipulation of price or production."  *Id.*

For purposes of the first requirement, Commerce determined that Prosperity and

Synn were "affiliated" within the meaning of section 771(33)(E) of the Tariff Act,

19 U.S.C. § 1677(33)(E) (2018), "based on Prosperity's ownership share of Synn during

the period of investigation (POI)."  *Second Remand Redetermination* at 10.  Commerce

found, further, that "Prosperity and Yieh Phui were affiliated based on a familial

relationship and because together they were in a position to control Synn, pursuant to

sections 771(33)(A) and (F) of the [Tariff] Act, respectively." *Id*. at 10–11.  Commerce

found the second requirement to be met because "Prosperity, Synn, and Yieh Phui all

produced subject merchandise during the POI" and, therefore, that "there was no need

for these producers to retool their facilities in order to restructure manufacturing

priorities." *Id*. at 11.

      In contesting the Department's decision in the Second Remand Redetermination

not to collapse Prosperity and the Yieh Phui component of the Yieh Phui/Synn entity,

defendant-intervenors argue that substantial record evidence did not support the

Department's negative determination under the third requirement in § 351.401(f)(1) for

collapsing, "a significant potential for manipulation of price or production."  As

required by its regulation, Commerce addressed the following non-exhaustive criteria

in applying the third requirement:

> (1) "[t]he level of common ownership," (2) "the extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm," and (3) "whether operations are intertwined," for example, "through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers."

*Id*. at 11–12 (quoting 19 C.F.R. § 351.401(f)(2)(i)–(iii)) (citation omitted).  "While the

Department 'need not find all of the factors . . . present,' Commerce 'must consider the

totality of the circumstances.'"  *Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1406

(quoting *Prosperity III*, 965 F.3d at 1323 (citations omitted)).  Commerce is not precluded

from collapsing even where "not all three of the factors are met or where the case for

collapsing is not strong under each one of them when considered separately."

*Prosperity II*, 42 CIT at __, 358 F. Supp. 3d at 1368.  Nevertheless, collapsing "requires a

'*significant'* potential for manipulation of price or production," which is a "more

demanding standard."  *Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1407 (quoting

*Prosperity III*, 965 F.3d at 1323–24 (citation omitted)).

      In its Final Determination, Amended Final Determination, and First Remand

Redetermination, Commerce "did not consider Prosperity's relationship with Yieh or

Prosperity's relationship with Yieh/Synn."  *Prosperity III*, 965 F.3d at 1325.  To address

this shortcoming, Commerce conducted "additional analysis of the relationship

between Prosperity and Yieh Phui not addressed previously."  *Second Remand*

*Redetermination* at 10.  Based on its new analysis, Commerce concluded "that the record

contains insufficient evidence to form a factual basis that 'significant potential for

manipulation' exists between Yieh Phui and Prosperity."  *Id*. at 12.  In reaching that

conclusion, Commerce addressed the three factors provided in 19 C.F.R. § 351.401(f)(2)

and determined that they were not satisfied:

        First, Prosperity and Yieh Phui do not share any significant
      common ownership, and there is no overlap in their largest shareholders.

> Second, none of Prosperity or Yieh Phui's managers and directors serve as managers or directors of the other firm. Third, the record does not reflect that the operations of Prosperity and Yieh Phui are intertwined in any way; specifically, the firms do not share sales information, have no involvement in each other's production and pricing decisions, do not share facilities or employees, and had no significant transactions with each other.

*Id.* (citations omitted). Commerce concluded, further, that "[t]he record contains several specific factors which *could* support Commerce's finding of a 'potential for manipulation of price or production' between Prosperity and Yieh Phui," *id.*, but also concluded these were "scant pieces of evidence" that were insufficient because "the collapsing criterion requires a 'significant' potential for manipulation of price or production based on the totality of the circumstances," *id.* at 13 (footnote omitted). Among the "factors" Commerce considered relevant but insufficient to show such a significant potential were:

> (1) a familial relationship between Prosperity and Yieh Phui (suggesting common family control); and (2) the notation in Prosperity's verification report that an "informal agreement" exists between Prosperity and Yieh Phui which provides that Prosperity and Yieh Phui may each appoint one of Synn's three directors (suggesting informal coordination between respondents).

*Id.* at 12–13 (footnote omitted).

Commerce considered the first factor insufficient under the criterion because, despite the familial relationship between the two companies (in both of which members of the Lin family held various positions in ownership, directorship, or management),

"the record does not support common family control by a family grouping." *Id*. at 13.

Commerce found, as to the second factor, that "the informal agreement noted in the

verification report is elsewhere established on record as a formalized agreement,

whereby the three largest shareholders in Synn each appoint a representative director to

Synn's board." *Id*. (footnote omitted).  "Such an arrangement between the largest

shareholders in a company is not extraordinary and we do not consider it, in itself,

evidence of potential for manipulation." *Id*.

On the decision not to collapse Prosperity and Yieh Phui, defendant-intervenors

argue that Prosperity and Yieh Phui had the potential to manipulate price or production

because of the roles various members of the Lin family, considered "in the aggregate,"

performed in ownership, board membership, and management of the two companies.

Def.-Ints.' Comments 9–13.  According to their argument, Commerce should have

applied the criteria of 19 C.F.R. §§ 351.401(f)(2)(i) (level of common ownership) and (ii)

(extent to which managerial employees or board members of one firm sit on the board

of directors of the affiliated firm) so as to treat the Lin family as a unified "family

entity." *Id*. at 10.  They maintain that "Commerce rejected this analysis, however,

because it erroneously believed that, even in cases involving control of two companies

by a family entity, the factors at 19 C.F.R. §§ 351.401(f)(2)(i) and (ii) can support

collapsing only when the *same individual family members* own both companies . . . and

when the *same individual family members* serve as managers or directors of both

companies."  *Id.* (citing *Second Remand Redetermination* at 26, 29, 30).

### 1.  Participation of Members of the Lin Family in the Ownership, Control, or Management of Prosperity and Yieh Phui

Commerce considered the Lin family to be something other than a "unified"

family entity and instead regarded it as having two distinct branches.  Commerce found

that the ownership, board, or management of Prosperity involved a different branch of

the Lin family than did the ownership, board, or management of Yieh Phui.  Commerce

found, specifically, that "the Lin family members involved in the ownership, board, or

management of Prosperity and its affiliates are all direct family relations (*i.e.*, sibling,

spouse, or parent/child) of Mr. Kao-Huang Lin" and that "the Lin family members

involved in the ownership, board, or management of Yieh Phui are all direct family

relations of Mr. Lin, I Shou."  *Second Remand Redetermination* at 26.  Commerce found,

further, that:

> Critically, there is no overlap of ownership, directorship, or
> management by any individual member of either branch of the Lin family
> with the other (*i.e.*, involvement of Lin family members in Yieh Phui
> remains distinct to direct family members of Mr. Lin, I Shou, and the
> involvement of Lin family members in Prosperity remains distinct to
> direct family members of Mr. Kao-Huang Lin).

*Id.* at 26–27 (footnote omitted).  Commerce found, further, that "Prosperity and Yieh

Phui are competitors" and "there is very little personal or professional interaction

among the family members involved in the respective companies." *Id*. at 27 (footnote

omitted).  Commerce concluded that "the two Lin family groups do not operate

collectively, as a cohesive unit, sharing a common interest or consisting of relationships

that could impact business decisions." *Id.* at 27–28.

Asserting that "Commerce assumed that a collapsing analysis must be conducted

at the level of individual family members rather than considering the family as a

collective unit," defendant-intervenors insist that "Commerce is simply wrong as a

matter of law."  Def.-Ints.' Comments 11.  They submit that "[t]he cases make clear that

the regulatory factors to be considered under 19 C.F.R. § 351.401(f)(2) are

non-exhaustive, and the statute broadly permits Commerce to find a 'significant

potential for manipulation' based on family ownership, management positions, and

board memberships *in the aggregate*." *Id*. at 11.  They argue that "Commerce failed to

properly analyze the significance of collective family ownership and control here

because it erroneously believed that it was precluded from finding a potential for

manipulation absent the appearance of the same individuals on the boards of both PT

and YP, or ownership by the same individuals." *Id*. at 12.  These arguments are

unconvincing.

No rule of law required Commerce to consider an extended family such as the

Lin family to be a single, unified entity when applying the criteria of 19 C.F.R.

§§ 351.401(f)(2)(i) and (ii).[3]  Moreover, defendant-intervenors mischaracterize the

reasoning Commerce employed.  Commerce did not conclude that, as a matter of law, it

could not find a significant potential for manipulation of price or production "absent

the appearance of the same individuals on the boards of both PT and YP, or ownership

by the same individuals."  *Id*. at 12.  It concluded instead that "the mere fact that there

are 'familial relations' between the two entities does not *in itself* support a determination

that the two entities constitute a single person for purposes of affiliation and

collapsing."  *Second Remand Redetermination* at 26 (emphasis added) (citing *Echjay*

*Forgings v. United States*, 44 CIT __, __, 475 F. Supp. 3d 1350, 1374 (2020)).  Commerce

performed the required analysis, making its collapsing determination according to its

non-exhaustive criteria and based on a totality of the circumstances.  Defendant-

intervenors arguments amount, at the most, to a contention that Commerce *could have*

found that one or more of its criteria were met based on the familial relationships.  They

do not demonstrate that Commerce reached findings unsupported by substantial record

---

[3] In support of this legal argument, defendant-intervenors cite *Echjay Forgings v. United States*, 44 CIT __, 475 F. Supp. 3d 1350 (2020), *Jinko Solar Co. v. United States*, 41 CIT __, 229 F. Supp. 3d 1333 (2017), and *Zhaoqing New Zhongya Aluminum Co. v. United States*, 39 CIT __, 70 F. Supp. 3d 1298 (2015).  Def.-Intervenors' Comments on Final Results of Redetermination Pursuant to Ct. Remand, ECF Nos. 164 (conf.), 165 (public). The holdings in these cases do not support the existence of a rule or principle under which Commerce was required, on the record before it, to regard the Lin family as a single, unified entity.

evidence, considered on the whole, such that it was required to rule otherwise than it

did.

2.  **The Department's Considering a Development Occurring After the Close of the POI in Deciding Not to Collapse Prosperity with the Yieh Phui/Synn Entity**

Defendant-intervenors argue that Commerce, in declining to collapse Prosperity

with the Yieh Phui/Synn entity, improperly considered evidence of an event that

occurred after the close of the period of investigation on March 31, 2015.  Def.-Ints.'

Comments 4–9.  The event at issue is Prosperity's divesting itself of an ownership

interest in Synn, which divestment became effective in December 2015, after the close of

the POI but before Commerce issued the Preliminary Determination in May 2016.  *See*

*id*. at 4 (citing *Second Remand Redetermination* at 32–33).  According to defendant-

intervenors' arguments, considering the divestment was unlawful because it departed

from agency practice without explanation, violated the doctrine of "law of the case,"

and violated the doctrine of judicial estoppel.  *Id*. at 4–5.

The Department's deciding to consider record evidence of a post-POI

development was atypical, but defendant-intervenors are incorrect that Commerce

failed to explain its rationale for doing so.  Commerce explained that the divestment

was relevant in response to the petitioners' argument in the remand proceeding that

"Prosperity and Yieh Phui could manipulate price and production through their

ownership of Synn."  *Second Remand Redetermination* at 33 (footnote omitted).

Commerce explained, further, in responding to this argument, that "the collapsing

criterion standard is focused on the price or production manipulation which might

transpire in the future," and, accordingly, that "the fact that Prosperity divested its

interest in Synn prior to the issuance of the *Preliminary Determination* and, thus, prior to

the imposition of AD duties indicates that concerns regarding the potential for future

manipulation are unfounded." *Id.* (footnote omitted).

      Nor are defendant-intervenors correct in asserting that Commerce acted contrary

to what they term "the law of the case."  According to their argument, "we have a clear

legal finding—upheld by this Court—that transactions or occurrences are relevant to

'future manipulation' in the collapsing analysis only when they take place during the

POI" and "[t]hat particular issue already has been resolved and may not be reopened in

this subsequent stage of the litigation."  Def.-Ints.' Comments 8.  For support, they rely

upon this Court's rulings in *Prosperity II* and *Prosperity I*.  *Id.* at 8–9.  But neither of those

cases ruled so broadly as defendant-intervenors describe.

      *Prosperity II* sustained the Department's decision to collapse Prosperity with the

Yieh Phui/Synn entity despite Prosperity's argument that its divesting of the interest in

Synn negated a possibility of future manipulation.  *Prosperity II*, 42 CIT at __, 358

F. Supp. 3d at 1369.  Commenting that Prosperity's ownership interest in Synn "had

significance through and beyond the POI itself," *id.*, this Court held that the "collapsing

decision rests on findings supported by substantial evidence on the record considered

as a whole," *id.*, 42 CIT at __, 358 F. Supp. 3d at 1370.  In other words, this Court

declined to hold that the post-POI divestiture was sufficient in itself to negate the

Department's decision to proceed with the collapsing decision.  (This Court's affirming

that decision in *Prosperity II* was reversed by the Court of Appeals in *Prosperity III* on a

different ground, as discussed previously in this Opinion.)  The rulings of this Court in

*Prosperity II* were not equivalent to a holding that Commerce, in any future

circumstance that might arise in this litigation, could not consider evidence of events

occurring outside of the POI when making a collapsing decision.

The Second Remand Redetermination presented just such a circumstance.

Commerce addressed a new and different issue that arose as a result of the decision of

the Court of Appeals in *Prosperity III*: specifically, whether Prosperity should be

collapsed with the Yieh Phui portion of the Yieh Phui/Synn entity.  The divesting

occurring in December 2015 is evidence relevant to that new issue.  Defendant-

intervenors fail to show that the doctrine of law of the case precluded Commerce from

considering whether it was pertinent to, and supportive of, its ultimate decision.

In support of their argument, defendant-intervenors also argue that "[m]oreover,

this Court agreed with PT that Commerce erred in considering other evidence

regarding cold-rolling services occurring outside the POI to support the collapsing

decision." Def.-Ints.' Comments 6 (citing *Prosperity I*, 42 CIT at __, 284 F. Supp. 3d at

1375). They add that "[a]s the Court of Appeals for the Federal Circuit would later

describe it, 'the Trade Court vacated Commerce's Final Determination, concluding that

Commerce had improperly relied on evidence outside the period of investigation.'" *Id*.

(quoting *Prosperity III*, 965 F.3d at 1324). Contrary to defendant-intervenors' argument,

this Court's opinion in *Prosperity I* did not state a broad holding that Commerce was not

permitted to rely upon evidence outside the POI in making a collapsing decision.

Instead, the opinion identified errors by Commerce in concluding that certain evidence

of intertwined operations between Prosperity and Synn pertained, or pertained

specifically, to the POI when in fact it did not. As the opinion stated, "[r]egarding the

timing of the cold-rolling services that Synn performed for Prosperity, defendant

admits that Commerce incorrectly stated in the Collapsing Memorandum that the cold-

rolling services Synn provided for Prosperity occurred during the POI." *Prosperity I*,

42 CIT at __, 284 F. Supp. 3d at 1375 (citation omitted). "Defendant also acknowledges

that the data detailing Synn's sales to Prosperity and its purchases from Prosperity were

for calendar year 2014, rather than for the POI, as found by Commerce." *Id*. (citation

omitted).

      The court also disagrees with defendant-intervenors that defendant is judicially

estopped from arguing in support of the Second Remand Redetermination that

Commerce was permitted to consider the post-POI divestment, having argued in an

earlier phase of this litigation that Commerce acted permissibly in disregarding it.  *See*

Def.-Ints.' Comments 8–9.  For the Second Remand Redetermination, Commerce

considered the divesting of the interest in Synn when resolving an issue that arose in

the special circumstance resulting from the decision of the Court of Appeals in

*Prosperity III*.  That Commerce had discretion to disregard this record evidence during

the investigation does not compel a conclusion that Commerce lacked discretion to

consider this evidence for a different purpose.  In short, the doctrine of judicial estoppel

does not bar defendant from arguing that Commerce could exercise its discretion to

consider this evidence in resolving the new issue as it arose in the current remand

proceeding.

### D.  The Department's Decision to Maintain Its Collapsing of Yieh Phui and Synn Rather than Collapse Synn and Prosperity

Defendant-intervenors contend that even had Commerce decided (over their

objection) not to collapse all three companies into a single entity, it should have

collapsed Prosperity and Synn rather than collapsing Yieh Phui and Synn.  *Id*. at 13–17.

The court does not find merit in this contention.

Defendant-intervenors' argument conflates what actually are two separate

issues.  In effect, they are arguing that Commerce, on this record, was *required*: (1) to

"uncollapse" the Yieh Phui/Synn entity that Commerce recognized early in the

investigation; and (2) after that is accomplished, to collapse Prosperity and Synn.

Of course, it would not have been possible for Commerce to collapse Prosperity with Synn without first uncollapsing the Yieh Phui/Synn entity (an action not required by the decision of the Court of Appeals in *Prosperity III*), and each of these two separate actions would entail application of the regulatory criteria in 19 C.F.R. § 351.401(f)(2).  By conflating the two actions, defendant-intervenors sidestep the issue of whether Synn, following the additional remand order that they seek, could or should be investigated as a separate exporter/producer.  Nor do they confront the complications such an uncollapsing, absent a subsequent collapsing of Prosperity and Synn, would entail.  For example, as noted previously in this Opinion, Synn did not export CORE to the United States during the POI.  *Prosperity I*, 42 CIT at __, 284 F. Supp. 3d at 1367 n.4 (citation omitted).  In addition, as Commerce pointed out, "Yieh Phui reported without objection relevant margin calculation information regarding Synn's cost of production and home market sales."  *Second Remand Redetermination* at 35 (footnote omitted).

Commerce addressed the relationships between Yieh Phui and Synn, and those between Prosperity and Synn, as they pertain to the factor described in 19 C.F.R. § 351.401(f)(2)(i), "[t]he level of common ownership."  Commerce justifiably concluded that this factor strongly favored the Department's continuing to treat Synn and Yieh Phui as single entity rather than adopting the course of action defendant-intervenors

advocate.  Commerce noted that "Yieh Phui is the largest single owner of Synn," *id*.

at 35, and compared this ownership interest to that of Prosperity, *id*. at 36, which had

been Synn's second largest shareholder but divested itself entirely of that ownership

interest.  Regarding the divesting, defendant-intervenors argue that Commerce

improperly considered this event occurring after the close of the POI and assert the

same grounds they asserted in arguing for a single entity consisting of all three

companies, i.e., that Commerce failed to explain its departure from practice, law of the

case, and judicial estoppel.  Def.-Ints.' Comments 14.  For the reasons discussed above,

the court again must reject their argument, and accordingly the court finds no fault in

the Department's giving significant weight to Prosperity's divesting of its interest in

Synn when deciding in the Second Remand Redetermination not to uncollapse Yieh

Phui and Synn and not to collapse Prosperity and Synn.  Even though it was completed

after the close of the POI, the divestment had significant implications for any

determination on whether Prosperity and Synn should be treated as one entity.  As

Commerce explained with respect to its decision not to collapse all three companies into

a single entity, a collapsing determination necessarily involves the issue of whether

price or production manipulation might transpire in the future, and the occurrence of

the divesting before issuance of the Preliminary Determination indicated that concerns

of the potential for such future manipulation were "unfounded."  *Second Remand*

*Redetermination* at 33 (citation omitted).  The same rationale pertains to the issue of

whether Prosperity should be collapsed with only the Synn portion of the Yieh

Phui/Synn entity following an uncollapsing of that entity.

Commerce found that the second factor, the extent to which managerial

employees or board members of one firm sit on the board of directors of an affiliated

firm, 19 C.F.R. § 351.401(f)(2)(ii), was met with respect to the Yieh Phui-Synn

relationship and also with respect to the Prosperity-Synn relationship but also

concluded that the ties were more extensive as to the former.  Commerce noted that

"Yieh Phui's President is on Synn's board, Yieh Phui's vice president is also a vice

president of Synn," and "various Yieh Phui managers are also managers at Synn."  *Id*.

at 35.  Commerce stated that "Prosperity's chairman was also on the board of Synn

(though no other overlap of board or management between Prosperity and Synn was

found)."  *Id*. at 36.

On the third factor, i.e., the presence of intertwined operations, 19 C.F.R.

§ 351.401(f)(2)(iii), Commerce found that they existed between Prosperity and Synn and

also between Yieh Phui and Synn.  Defendant-intervenors take issue with this finding,

asserting that "Synn should be collapsed with PT rather than with YP, because it was

highly intertwined operationally with the former and was not at all intertwined with

the latter."  Def.-Ints.' Comments 14.  They add that "in the event that Commerce was

deciding which company to collapse with Synn, the 'intertwined operations' factor at

19 C.F.R. § 351.401(f)(2)(iii) should have weighed heavily in favor of collapsing Synn

with PT rather than YP." *Id.* at 14–15.

      In the Second Remand Redetermination, Commerce found that the record

contained "clear evidence of operational intertwining" between Yieh Phui and Synn,

"such as co-located facilities and payments of salaries for managers." *Second Remand*

*Redetermination* at 35–36 (footnote omitted).  Commerce stated that "[r]ecord evidence

demonstrates a significant level of common management of Yieh Phui and Synn

Industrial," offering as examples, *inter alia*, that Yieh Phui's president served on Synn's

board, its vice president served as Vice President of Synn's Financial Division, and

employees of Yieh Phui served as managers of Synn.  *Id.* at 36 n.198 (citing *Less Than*

*Fair Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan:*

*Preliminary Affiliation and Collapsing Memorandum for Yieh Phui Enterprise, Co., Ltd.* at 5

(Int'l Trade Admin. Dec. 21, 2015), PR Doc. 272 ("*Prelim. Collapsing Mem.*")).  Defendant-

intervenors object that the finding as to common management "relates to the separate

factor at 19 C.F.R. § 351.401(f)(2)(ii) regarding the extent to which managerial employees

serve both companies, rather than to the 'intertwined operations' factor at 19 C.F.R.

§ 351.401(f)(2)(iii)."  Def.-Ints.' Comments 15.  They also point to the lack of "evidence of

shared facilities or transactions between the entities."  *Id.*  This argument is misguided.

The factor described in 19 C.F.R. § 351.401(f)(2)(iii) is broader than defendant-

intervenors presume.  The text of the regulation contains a non-exhaustive list of

exemplars for consideration: "the sharing of sales information, involvement in

production and pricing decisions, *the sharing of* facilities or *employees*, or significant

transactions between the affiliated producers."  19 C.F.R. § 351.401(f)(2)(iii) (emphasis

added).  Therefore, it was reasonable for Commerce to regard Yieh Phui's and Synn's

co-location of factory facilities and sharing of management personnel as valid

considerations under this factor.  Overall, the Department's affirmative finding on this

factor was within the intended scope of the regulation.

In arguing that Commerce erred in collapsing Synn with Yieh Phui rather than

Prosperity, defendant-intervenors highlight that Commerce, in the Second Remand

Redetermination, chose to cite the "Preliminary Collapsing Memorandum" for "clear

evidence of operational intertwining" between Yieh Phui and Synn, Def.-Ints.'

Comments 15 (quoting *Second Remand Redetermination* at 35, 36 n.198 (citing *Prelim.*

*Collapsing Mem.* at 5)), and ignored contrary conclusions contained in its "Final

Collapsing Memorandum," *Less Than Fair Value Investigation of Certain Corrosion-*

*Resistant Steel Products from Taiwan: Final Affiliation and Collapsing Memorandum* at 7, PR

Doc. 379 (May 24, 2016) (stating, *inter alia*, that "[t]he record does not contain evidence

to suggest that operations were intertwined between either Yieh Phui and Synn

Industrial or Yieh Phui and Prosperity Tieh during the POI."). This argument is also unpersuasive. Commerce was free to re-examine the record during the remand proceeding and make findings contrary to those it had made during the investigation.

The most that can be said for defendant-intervenors' position is that the record, which contained evidence of transactions between Prosperity and Synn, *see* Def.-Ints.' Comments 16, could have supported a finding that the intertwining of Prosperity's and Synn's operations was more extensive than the intertwining of Yieh Phui's and Synn's operations. But that finding, standing alone, would not invalidate the Department's determination on the issue, which rested primarily on the first two factors of 19 C.F.R. § 351.401(f)(2). Nothing required Commerce to base its conclusion exclusively on the third factor. That the third factor, considered in isolation, could have favored collapsing Synn with Prosperity instead of with Yieh Phui is not a sufficient basis upon which the court may disallow the Department's ultimate conclusion on the question presented. As Commerce concluded,

> For this final redetermination, we find that the higher ownership stake in Synn maintained by Yieh Phui (as its largest individual owner), the significant ownership overlap and co-location of factory facilities, and in particular the record information which demonstrates that Prosperity divested its interest in Synn discussed above, support our determination in the Draft Results to include Synn's information in the calculation of the margin for YP/Synn and calculate a separate margin for Prosperity, and we continue to do so in this final redetermination.

*Second Remand Redetermination* at 36–37.  The court must reject defendant-intervenors'

contention that the record evidence required Commerce to collapse Synn with

Prosperity and not with Yieh Phui.

### E.  Commerce's Reinstatement of Facts Otherwise Available and an Adverse Inference for the Reporting of Yield Strength Data in the Second Remand Redetermination

The Court of Appeals held in *Prosperity III* that "the Trade Court erred [in

*Prosperity II*] when it reversed Commerce's finding that Prosperity misreported yield

strength.  We vacate that aspect of the Trade Court's judgment."  965 F.3d at 1328.

Accordingly, in *Prosperity IV* this court ordered that "in the Second Remand

Redetermination Commerce, in determining a margin for Prosperity, shall employ the

use of facts otherwise available with an adverse inference as to the reporting of yield

strength by Prosperity that it used in its final and amended determinations."

*Prosperity IV*, 45 CIT at __, 532 F. Supp. 3d at 1409.  Commerce has done so, and no party

contests this aspect of the Second Remand Redetermination.

### F.  Exclusion of the Yieh Phui/Synn Entity from the Antidumping Duty Order

Further to the Department's permissible decisions in the Second Remand

Redetermination not to collapse Prosperity with the Yieh Phui/Synn entity and not to

alter its decision to maintain Yieh Phui and Synn as a collapsed entity, the court will

sustain the Department's assigning Prosperity an estimated weighted average dumping

margin of 11.04% and its assigning a *de minimis* estimated weighted average dumping

margin of 1.20% to the Yieh Phui/Synn entity, as a consequence of which the Yieh

Phui/Synn entity must be excluded from the Order.  In sustaining these decisions, the

court does not sustain the following statement in the Second Remand Redetermination:

> While YP/Synn will be excluded from the order as a result of this
> redetermination, in the future, to the extent evidence indicates that the
> circumstances have changed and that the three companies are acting as a
> collapsed entity, Commerce has authority to investigate the relationship of
> the companies and may find the merchandise produced by the collapsed
> entity to be subject to the order.

*Second Remand Redetermination* at 37.  In including this statement within the Second

Remand Redetermination, Commerce asserts that it may exercise the authority in the

future (ostensibly, in a future review conducted under section 751(b) of the Tariff Act,

19 U.S.C. § 1675(b) (2018)) to assess antidumping duties on merchandise produced or

exported by a company, entity, or companies that have been excluded from the Order

as a result of having been assigned a *de minimis* margin in an antidumping duty

investigation.  In including this statement in the determination before the court,

Commerce is attempting, speculatively, to decide an issue or issues that are not before

the court in this litigation and, therefore, are not among the issues Commerce was

authorized to decide in the remand proceeding that it conducted under the court's

supervision.  The court, therefore, does not sustain the sentence in question.  The court's

entry of a judgment that will conclude this consolidated action does not signify that the

sentence in question is a correct statement with respect to law or fact.

### III. CONCLUSION

The court will sustain the decisions in the Second Remand Redetermination

assigning Prosperity an estimated weighted average dumping margin of 11.04%,

assigning the Yieh Phui/Synn entity a *de minimis* margin of 1.20%, and excluding that

entity from the Order.  The court does not sustain the Department's statement on the

possibility that the outcome of a future proceeding may alter or affect the exclusion

from the Order of the Yieh Phui/Synn entity.  The court will enter judgment

accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: June 23, 2023
        New York, New York